708 So.2d 496 (1998)
Noel M. GILBERT, et al., Plaintiff-Appellant,
v.
John P. VISONE, Defendant-Appellee.
No. 30204-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*497 Comegys, Jones, Odom, Spruiell & Davis, L.L.P. by Frank H. Spruiell, Jr., for Plaintiff-Appellant Cardio Devices, Inc.
Wiener, Weiss & Madison by Larry Feldman, Jr., Mark L. Hornsby, Shreveport, for Defendant-Appellee.
Before MARVIN, C.J., and STEWART and GASKINS, JJ.
MARVIN, Chief Judge.
In this action filed in 1984 seeking damages for breach of contract, plaintiff Cardio Devices, Inc., which had once been a distributor of Telectronics cardiac pacemakers, appeals a judgment sustaining an exception of res judicata barring Cardio's demands against Cardio's former sales representative, defendant Visone.
In a 1980 federal court diversity action Cardio had sued Telectronics, alleging that Telectronics had breached or wrongly terminated its contract with Cardio. The federal court found Telectronics justified in terminating its contract and rendered a judgment dismissing Cardio's breach of contract demands. Shortly after that judgment was affirmed on appeal in 1984, Cardio brought the instant breach of contract action in state court against Visone, who had been a witness in the federal court action.[1]
In 1996, about 12 years after Cardio brought the state court action, Visone filed his exception of res judicata. Applying the former La. C.C. art. 2286 law, the trial court sustained the exception, reasoning that the *498 two actions involved the same or virtually the same parties and cause of action.
We reverse and remand.

FACTS
Cardio, a Louisiana corporation, in 1979 entered into a two-year exclusive sales agreement with Telectronics, a pacemaker manufacturer domiciled in Colorado, to sell Telectronics products in six southern states, including Louisiana, Arkansas and Mississippi. In that same year, Cardio then separately contracted with John Visone, a Shreveport resident, to serve as Cardio's sales representative in north Louisiana and south Arkansas for roughly the same two-year period, 1979-1981, irrespective of which manufacturer or manufacturers supplied the products to be sold by Cardio during the contract period.
Notwithstanding this express provision, Visone unilaterally terminated his contractual relationship with Cardio after Telectronics terminated its contract with Cardio [for cause as the federal court later found] and accepted Telectronics' offer to serve as an exclusive sales representative of Teletronics in the same territory, as evidenced by a third contract in the record.
Visone was not a party to the federal court action, nor to the 1979 exclusive sales agreement between Telectronics and Cardio. The federal court's jurisdiction to adjudicate Cardio's breach of contract claim against Telectronics, the only claim asserted in the complaint, was premised solely on the diversity of citizenship between the two litigants. The only portions of the federal court record that appear in this record are the complaint, the district court's judgment and reasons for judgment, the per curiam affirmance by the 5th Circuit, and an excerpt from the trial transcript in which the court admonished Cardio's counsel, apparently during his cross-examination of Visone, to cease questioning the witness about the reasons for his departure from Cardio. The court stated:
... I let you touch on this for credibility purposes; but ... if you all want to file a lawsuit against this individual, that's another case at another time you all can litigate that one. But we are not going to litigate this agreement [between Cardio and Visone] and who violated what. (Our brackets.)
Visone's exception of res judicata was presented to the trial court on documentary evidence only, consisting primarily of the pleadings, the three contracts and the limited portions of the federal court record noted above. After argument by adverse counsel, the trial court essentially agreed with Visone's contentions that the federal court judgment against Cardio in favor of Teletronics "necessarily determined" the obligations between Cardio and Visone, and that "Visone cannot be liable [to Cardio] because Telectronics was not liable."
Our review compels us to find that the record does not support, but negates, the factual premise upon which the court's legal conclusion is based.

THE CONTRACTS
Each of the three contracts mentioned aboveTelectronics-Cardio, Cardio-Visone and Telectronics-Visoneis simply labeled a "Representative Agreement." In this opinion we shall refer to the first agreement as the "Cardio exclusive sales agreement," to the second as the "Visone sales representative agreement," and to the third as the "Visone exclusive sales agreement."

Cardio Exclusive Sales Agreement
This agreement, for the period May 1979 June 1981, names Cardio/Gilbert as the "Representative" of Telectronics in six southern states including Louisiana, Arkansas and Mississippi. Cardio's status as the exclusive representative of Telectronics in the sales territory is not expressly stated in the agreement but was apparently understood and intended by the parties. The agreement required Cardio to meet a monthly sales quota, "to be decided at a later date, no later than 7/31/79." Telectronics agreed to pay a specified commission on each "quota unit" and a lesser commission on "other units."

Visone Sales Representative Agreement
A few months after executing the exclusive sales agreement with Telectronics, Cardio contracted with Visone, a resident of Shreveport, *499 to represent Cardio in "North Louisiana and Southern Arkansas" for the period October 1979September 1981. The agreement establishes Visone's monthly sales quota but does not specify the amount of Visone's commissions.
We emphasize this portion of the agreement:
... It is expressly understood by [Visone] that [Cardio] may from time to time ... add, delete, or change the manufacturers... of some of the products that [Cardio] sells ... and that [Visone] is cognizant of this possibility and hereby agrees ... that all provisions of this contract shall apply equally to any new or changed manufacturers.
Visone also agreed "not to represent or work for a competitor of [Cardio] or its pacemaker manufacturers" in the sales territory for one year after termination of the agreement with Cardio. Our emphasis. Cardio has not specifically pleaded Visone's breach of the agreement not to compete in the state court action, perhaps because Telectronics, a pacemaker manufacturer, may not be considered a competitor of Cardio.
Visone asserted in the trial court that he "was a party to the contract between Cardio and Telectronics" by virtue of his having signed an addendum to his agreement with Cardio in which he bound himself to the terms and conditions of Cardio's exclusive sales agreement with Telectronics. That assertion or argument is the basis of Visone's contention that he was essentially a subrepresentative or subagent of Telectronics during the time he worked for Cardio, and that his obligations under the agreement with Cardio were "derivative of" and dependent on the continuation of Cardio's contractual relationship with Telectronics. Cardio disputes that assertion. Visone conceded at oral argument in this court that he is unable to locate and produce such a signed addendum to his contract with Cardio.

Visone Exclusive Sales Agreement
In April 1980, more than a year before Visone's contract with Cardio expired and about the same time that Telectronics terminated its exclusive sales agreement with Cardio, Visone contracted directly with Telectronics to represent Telectronics in specified parishes and counties in Louisiana, Arkansas and Mississippi through December 31, 1981. This contract, like the others, provides for monthly sales quotas and commissions.

STATE OR FEDERAL LAW?
In the trial court, the litigants argued their respective positions on the res judicata exception solely under state law, former La. C.C. art. 2286, the law which the trial court applied. For the first time on appeal, Visone contends the preclusive effect of a federal court judgment rendered in a diversity action is to be determined by federal res judicata principles rather than by the law of the state in which the diversity court sat. See Pilie & Pilie v. Metz, 547 So.2d 1305 (La.1989); Palmer v. Lanco Constr., Inc., 95-0987 (La. App. 4th Cir. 11/30/95), 665 So.2d 1217; and Westridge v. Claiborne Builders, Inc., 96-1527 (La.App. 4th Cir. 9/11/96), 681 So.2d 16.
While agreeing that federal law may apply under the circumstances of this case, we find no material difference in the result produced by application of that law in place of the former Louisiana law. Under either analysis, this record does not support a finding that the essential elements of res judicata have been established.

ELEMENTS OF RES JUDICATA

Both state and federal res judicata principles require a showing that the successive actions involve the same demand or cause of action between the same or virtually the same parties. See generally Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La. 1978) and Sun Finance Co., Inc. v. Jackson, 525 So.2d 532 (La.1988), applying former C.C. art. 2286. Compare Benson and Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172 (5th Cir.1987) and Condrey v. Howard, 28,442 (La.App.2d Cir. 8/21/96), 679 So.2d 563, writ denied, applying federal res judicata law.

Same Parties
Under former Art. 2286, a judgment had preclusive effect on those who were parties to the action in which the judgment was *500 rendered, on the successors in interest of those parties, and on others who "shared the same quality as parties," such as one whose alleged liability derived solely from legal or contractual responsibility for the actions of another. See these examples of identical parties: Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1st Cir.1981) (parties to compromise and their heirs); State, Dept. of Social Services v. Coleman, 616 So.2d 844 (La.App. 3d Cir.1993) (state representing mother's right to enforce child support obligation); and Cornish v. Freeman, 451 So.2d 148 (La. App. 1st Cir.1984), writ denied (insured and her liability insurer, to extent of policy limits).
Under federal law, the preclusive effect of a judgment binds the parties to the action and nonparties who are deemed the "privies" of the parties in these limited circumstances:
 The nonparty is the successor in interest of a party;
 The nonparty controlled the prior litigation; or
 The nonparty's interests were adequately represented by a party to the action who may be considered the "virtual representative" of the nonparty because the interests of the party and the nonparty are so closely aligned.
Condrey, supra, citing Meza v. General Battery Corp., 908 F.2d 1262 (5th Cir.1990); Benson and Ford, Inc., supra. The concepts of "control" and of "virtual representation" are narrowly construed and are not satisfied merely by showing that the party and the nonparty have common or parallel interests in the factual and legal issues presented in the respective actions, or that the nonparty testified on the party's behalf in the prior action. Benson and Ford, Inc., supra; Eubanks v. FDIC, 977 F.2d 166 (5th Cir.1992).

Same Cause of Action
Under former La. C.C. art. 2286, a judgment had preclusive effect only as to those demands that were actually litigated between the same parties in the earlier proceeding. Mitchell v. Bertolla, 340 So.2d 287 (La.1976); Cantrelle Fence & Supply Co., Inc. v. Allstate Ins. Co., 515 So.2d 1074 (La. 1987); Greer v. State, 616 So.2d 811 (La.App. 2d Cir.1993).
The broader federal law, like the present state law (La. R.S. 13:4231 et seq., amending former Art. 2286), precludes not only those claims that were actually litigated in the earlier proceeding, but any other claims between the same parties arising out of the same "transaction" or the same "nucleus of operative facts." Pilie, supra; Matter of Howe, 913 F.2d 1138 (5th Cir.1990).
Even under the federal law, however, it is essential to the principle of res judicata that the party against whom the exception is asserted "had the opportunity to raise the claim in the first adjudication." Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654 p. 16 (La.1/16/96), 666 So.2d 624, 634. Such an opportunity is lacking when the later-asserted claim is one over which the tribunal in the first action would not have had subject matter jurisdiction. See, for example, Benton, Benton and Benton v. Louisiana Public Facilities Authority, 95-1367 (La.App. 1st Cir. 4/4/96), 672 So.2d 720, writ denied. Compare Pilie, supra.

DISCUSSION
Whether we analyze the contracts under state or federal res judicata law, we cannot agree with Visone's attempt to have us conclude that Cardio's two actions involve the same demand or cause of action against the same or virtually the same parties.
Visone has not asserted or shown in this record that he was a successor in interest of Telectronics in Telectronics' dealings with Cardio, or that he controlled Telectronics' defense of the federal action. Instead, he claims that his contractual obligations to Cardio derived solely from and hinged on the contractual relationship between Cardio and Telectronics so as to allow the trial court to conclude that Visone and Telectronics "shared the same quality as parties" under former Art. 2286, or alternatively, that Telectronics was Visone's "virtual representative" under federal law.
The above contention ignores Visone's express agreement to continue working for *501 Cardio even if Cardio ceased selling the products of Telectronics and sold products of others, and ignores the lack of evidence that Visone's contract with Cardio created for him a [sub]contractual relationship with Telectronics. Under these circumstances, we must conclude that the trial court was clearly wrong in characterizing Visone as the [sub]agent for Telectronics, the successful defendant in the federal court action. This record will not allow either of the court's implicit legal conclusions that Visone and Telectronics "shared the same quality as parties" or that Cardio's rights against Visone were "actually litigated" in the federal action.
This record negates Visone's factual assertion that his contractual obligations to Cardio derived solely from and hinged on the contractual relationship between Cardio and Telectronics. The contract between Cardio and Visone clearly stated that Visone's agreement to work for Cardio during the contract period would not be affected by a change in the manufacturer of the products to be sold by Cardio. Visone's contract is not conditioned on or related to, but is separate and distinct from, Cardio's contract with Telectronics.
Under these circumstances, it cannot be said that Visone and Telectronics "shared the same quality as parties" under former Art. 2286, or that Visone's interests under the Cardio-Visone sales representative agreement were adequately represented by Telectronics' defense of Cardio's claim for breach of the Cardio-Telectronics exclusive sales agreement, making Visone a "privy" of Telectronics under federal res judicata law.
The limited portions of the federal court record made a part of this record, including the federal court's reference to the Cardio-Visone contract as "another case ... you all can litigate ... at another time," preclude a finding that Cardio's rights against Visone were actually litigated in the federal action, an essential element of res judicata under former Art. 2286. Even under the broader federal standards governing the "same cause of action" element of the exception, the record fails to show that Cardio had the opportunity to litigate its claim against Visone in the prior action.
As mentioned, the sole jurisdictional basis for Cardio's breach of contract action in federal court was the diversity of citizenship between Cardio, a citizen of Louisiana, and Telectronics, a Colorado citizen. Neither that claim nor Cardio's breach of contract claim against Visone presented an issue of federal law. Visone, like Cardio, was and is a Louisiana domiciliary and could not have been joined as a defendant in a federal court diversity jurisdiction action under 28 U.S.C. § 1332, which requires that each defendant be a citizen of a different state from each plaintiff. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); Fawvor v. Texaco, Inc., 546 F.2d 636 (5th Cir.1977).
Considering the separate and distinct contracts, we cannot agree with Visone's contention that the federal court's dismissal of the former federal action "necessarily determined" the instant state action. Cardio's breach of contract claim against Visone was not actually litigated in Cardio's federal action against Telectronics. On this record, Cardio did not have the opportunity to raise its claim against Visone in the federal action. The elements of res judicata, whether under state or federal law, are simply not present in this action.

DECREE
We reverse the judgment appealed and render judgment overruling Visone's exception of res judicata and remand for further proceedings. Costs arising out the exception, here and below, are assessed to Visone.
REVERSED, RENDERED AND REMANDED.
NOTES
[1] Cardio's principal, Noel M. Gilbert, was also named as a plaintiff in both actions but was dismissed from the state court action in 1985 on exceptions of no cause and no right of action. Cardio does not dispute the federal court's finding that Cardio is Gilbert's alter ego.